IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANGELA MILLER, etc.,

                Plaintiff,         Case No. 3:07 CV 1359

   -vs-

                                           MEMORANDUM OPINION

VREBA HOFF DAIRY DEVELOPMENT, LLC,

                Defendant.

KATZ, J.

     This matter is before the Court on Defendant Vreba-Hoff Dairy Development's (Vreba-Hoff) Rule 12(c) motion for judgment on the pleadings (Doc. 14). This Court has jurisdiction pursuant to 28 U.S.C. §1332.

**I.    Background**

     Plaintiff Angela Miller is the personal representative of the estate of the deceased Jeremy Miller, who was killed when he was backed over by a feed wagon while working at Peter's Dairy in Henry County, Ohio. Doc. 1, 5-7. Plaintiff is suing Defendant Vreba-Hoff Dairy Development under theories of common law negligence for the wrongful death of Jeremy Miller.

     Defendant Vreba-Hoff designs dairy project sites, known as concentrated animal feed operations (CAFOs), for farms across the Midwest. Doc. 1, 9-10. Defendant has developed more than sixty-two such CAFOs, and in the course of doing so has devised what Plaintiff refers to as the "Vreba-Hoff Model," a "turn-key operation" consisting of the design of the entire farm, "including the milking parlor, the freestall buildings where the dairy cattle are housed when not

being milked, and the system and configuration for feeding the dairy cattle in the freestall building." Doc. 1, 12-13, 15.

Defendant designed the CAFO operation used by Peter's Dairy. Doc. 1, 14. The design that Defendant created for Peter's Dairy included a freestall building in which cattle were housed on either side of a center aisle. Doc. 1, 16-17. At feeding time, a feed wagon would be driven down the aisle, discharging its contents into feeding bunkers for the cattle. Doc. 1, 17. Defendant designed the building such that, when the wagon reached the end of the aisle, the wagon had to back out the length of the aisle - there was no turn around drive or drive-through exit at the end of the aisle. Doc. 1, 19-20. Additionally, Plaintiff alleges that Defendant's design required use of a feed wagon that did not have an automatic audible backup warning, and one that had limited visibility when backing up. Doc. 1 21, 28. Moreover, Defendant is a distributor of the type of feed wagon used in this case, and recommended and sold the wagon used by Peter's Dairy. Doc. 1, 23-24.

On May 13, 2005, Decedent was working for an independent contractor in the center aisle of the freestall building at Peter's Dairy. Doc. 15, p. 3. While working, Decedent was killed when he was run over by a feed wagon backing down the center aisle. Doc. 1, 7. The wagon was driven by an employee of Peter's Dairy. Doc. 1, 7.

Plaintiff instituted this wrongful death action against Defendant Vreba-Hoff on May 5, 2007. On August 17, 2007, Defendant moved for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Doc. 14. For the reasons stated herein, Defendant's motion for judgment on the pleadings is hereby denied.

**II.     Judgment on the pleadings**

2

After the pleadings are closed, FED. R. CIV. P. 12(c) permits any party to move for judgment on the pleadings as long as trial is not delayed as a result. A 12(c) motion employs essentially the same standard as a 12(b)(6) motion. *Spivey v. Ohio*, 999 F. Supp. 987, 991 (N.D. Ohio 1998); *United Food & Commer. Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004). Specifically, "a district court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (quoting *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)).

### III. Analysis

#### A. Statutory Products Liability

Plaintiff's complaint contains factual allegations that potentially show a claim for statutory products liability under OHIO REV. C. § 2307.71 et. seq. Indeed, Defendant spent a significant portion of its motion arguing against a claim of statutory products liability for Defendant's sale of the feed wagon that killed Jeremy Miller. Doc. 14, p. 3-4. Notwithstanding these factual allegations, however, Plaintiff maintains that "this is a negligence claim alleging that Defendant breached its duty to anticipate and guard against foreseeable dangers in its design, development, construction, and equipping of its dairy CAFO. Whether or not the feed wagon constitutes a 'defective product' as defined in R.C. § 2307.71 because it did not include an automatic audible back up alarm, is not at issue." Doc. 15, p. 9.

Given that Plaintiff unequivocally denies that its claims are based on statutory products liability, such an analysis is not necessary.

3

### B. Common Law Negligence

Plaintiff is suing Defendant for common law negligence under Ohio law, alleging that Defendant was negligent "in its design, development, construction, and equipping of its dairy CAFO." Doc. 15, p. 9.  "In order to maintain a negligence action, a plaintiff must show the existence of a duty, a breach of that duty, and that the breach of that duty proximately caused the plaintiff's injury." *City of Cincinnatti v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 421 (2002) (citing *Jeffers v. Olexo*, 43 Ohio St. 3d 140, 142 (1989)).

#### 1. Duty

The existence of a duty is a question of law. *Mussivand v. David*, 45 Ohio St. 3d 314, 318 (1989).  "A defendant's duty typically may be established by common law, legislative enactment, or by the particular facts and circumstances of a case." *Galay v. Ohio Dep't of Transp.*, 2006 Ohio App. LEXIS 4049, at **25 (Ohio Aug. 10, 2006) (citing Chambers v. St. Mary's School, 82 Ohio St. 3d 563, 565 (1998)).  Moreover, "[the Ohio Supreme Court] has often stated that the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." *Wallace v. Ohio Dep't of Commerce.*, 96 Ohio St. 3d 266, 274 (2002) (citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680 (1998)).

In the case at bar, Plaintiff does not cite any laws, regulations, or Ohio cases illustrating that the designer of a turn-key CAFO operation has the duty to develop such an operation in a way that reasonably protects workers from injury.  Instead, Plaintiff offers a normative argument, asserting that Defendant's design creates a foreseeable risk of injury to workers.  As such, Plaintiff

contends that the facts and circumstances of this particular case impose a duty on Defendant. *See* Doc. 15, p. 4-7. This Court agrees.

> Taking Plaintiff's allegations as true,
>
> Defendant had complete control over every aspect in the development and creation of the 'turn-key' operation at issue . . . . It designed the layout, the buildings, and the specific system and configuration for feeding the dairy. It oversaw and coordinated the construction of its operation. It selected and supplied the exact machinery to be used in the operation.

Doc. 15, p.7. Additionally, Defendant's design controlled where and how such machinery would move, and where workers would be operating in relation to that machinery. Id. Given this level of control, there was a foreseeable risk of injury to workers depending on how Defendant actually designed the system. As such, the facts and circumstances of this case impose on Defendant a duty to develop its CAFO operations in a way that reasonably protects workers from injury.

While there is no case directly governing the duty of CAFO designers, the duty at issue in this case may be analogized to the duty of architects or engineers. In addition to liability for failing to comply with administrative codes and regulations, the Ohio Court of Appeals for the Seventh Appellate District stated that "generally an architect may be held liable for the foreseeable consequences of failing to exercise reasonable care in preparing designs . . . ." *Spencer v. The Magic Twanger Restaurant*, 1998 Ohio App. LEXIS 2003, at *25 (Ohio Ct. App. 1998). Similarly, this Court believes that in this case, the Defendant had a duty to design its CAFO operation in a way that reasonably protects workers from injury.

Defendant argues that any legal duty is negated by the "open and obvious" doctrine. Doc. 14, p. 5; Doc. 16 p. 2. "The 'open and obvious' doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the

5

property." *Simmers v. Bentley Constr. Co.*, 64 Ohio St. 3d 642, 644 (1992) (citing *Sidle v. Humphrey*, 13 Ohio St. 2d 45, 42 (1968)). As correctly pointed out by Plaintiff, Doc. 15, p. 9, the "open and obvious" doctrine is not applicable to this case because Defendant neither owns nor occupies Peter's Dairy. *See Simmers*, 13 Ohio St. 3d 642, 645 (explaining that "We are not persuaded to extend the 'open and obvious' doctrine to persons who conduct activity with the consent of the landowner but who themselves have no property interest in the premises."); *Deem v. Columbus S. Power Co.*, 2007 Ohio App. LEXIS 3970, at \*\*9-\*\*10 n.3 (Ohio Ct. App. 2007) (quoting *Simmers*, 64 Ohio St. 3d 642, 645) (noting that the "open and obvious" doctrine is premised on the defendant having a "property right and power to admit or exclude persons as invitees").

Defendant also contends that it had no duty to the decedent under *Bond v. Howard Corp.*, 72 Ohio St. 3d 332 (1995). Doc. 14, p. 6-7; Doc. 16, p. 2-3. In *Bond*, the Ohio Supreme Court explained that when a party hires an independent contractor to conduct an inherently dangerous activity, no liability attaches to the hiring party. 72 Ohio St. 3d 332 (quoting *Wellman v. E. Ohio Gas Co.*, 160 Ohio St. 103 (1953)). However, the *Bond* court also noted that liability does attach to the hiring party if (1) it participated in the contractor's work, and (2) it did not exercise ordinary care to eliminate the hazard. *Bond*, 72 Ohio St. 3d 332, 334-35 (quoting *Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St. 3d 206 (1983)). Therefore, Defendant asserts that because Vreba-Hof did not participate in the decedent's work, it has no liability under *Bond*. Defendant's argument is misguided.

First, this line of reasoning ignores the fact that it was Peter's Dairy, not the Defendant, which hired the decedent to do work in the freestall building. This fact alone distinguishes *Bond*

6

from the case at bar. Second, Defendant has failed to substantiate its conclusory claim that working in the aisle of a freestall building qualifies as an inherently dangerous activity under Ohio law. Consequently, Defendant's reliance on the fact that Vreba-Hof did not participate in the decedent's work is irrelevant, as *Bond* is not applicable to this case.

Defendant, as a designer of the CAFO, supplier of the feed wagon, and principal participant in the layout and operations of the CAFO, had a duty to develop its CAFO operation in a way that reasonably protects workers from injury.

### 2. Breach

Taking the facts alleged in Plaintiff's complaint as true,

> Defendant had multiple ways to guard against the foreseeable danger of a worker being backed over by the feed wagon. Defendant could have designed an alternative feeding system. Defendant could have designed and constructed a freestall barn with a turn around or through drive for the feed wagon. Defendant could have required and/or sold a different feed wagon that did not have limited visibility when backing up. Defendant could have required or placed an automatic audible back-up alarm or similar warning mechanism on the feed wagon involved in this case. Yet, Defendant did none of these things.

Doc.15, p. 8. Instead, Defendant designed a CAFO system in which it "knew and intended that dairy workers, including business invitees such as [the decedent], would be working in the center aisle [of the freestall building]." *Id.* Moreover, Defendant designed the system such that a feed wagon with no audible backup warning and limited backup visibility had to back down the same aisle that it used to load and deliver the feed without the benefit of a turnaround.

Defendant has not contested any of these allegations, nor has it attempted to show that its CAFO operation was designed in a way that reasonably protects workers from injury. The only argument Defendant has made to show that it complied with its duty was to assert that Ohio does not have a regulation requiring farm machinery to be equipped with audible back up alarms. Doc.

7

14, p. 5-6. At this stage of the case, however, the absence of such a regulation is not enough to negate Plaintiff's otherwise sufficiently pled claim that Defendant breached a duty to develop its CAFO operation in a way that reasonably protects workers from injury.

### 3. Cause and damages

Defendant does not dispute that on May 13, 2005, the decedent was killed when he was run over by the feed wagon backing down the center aisle of the CAFO designed by Defendant. Doc. 1, 7. There is no question based on the pleadings at this point, that the impact of the feed wagon on the decedent caused his death. There are no other arguments relating to cause that have not been previously addressed herein.

## IV. Conclusion

For the reasons discussed herein, Defendant's Rule 12(c) motion for judgment on the pleadings is hereby denied.

IT IS SO ORDERED.

                                                s/ *David A. Katz*
                                                DAVID A. KATZ
                                                U. S. DISTRICT JUDGE